# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-KP-00371-SCT

*CHARLES BRISLIN*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 2-21-95 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY | |
| NATURE OF THE CASE: | CRIMINAL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 6/26/97 |
| MOTION FOR REHEARING FILED: | 7/25/97 |
| MANDATE ISSUED: | |

**BEFORE SULLIVAN, P.J., McRAE AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

Charles Brislin was indicted in the Circuit Court of Lowndes County on four counts of uttering a forgery as an habitual offender. In accordance with a plea bargain arranged by Brislin's court-appointed attorney, Brislin pleaded guilty to two counts at the plea hearing on November 15, 1993. After determining that Brislin's guilty plea was knowingly, voluntarily and intelligently made, the circuit court accepted Brislin's guilty plea and adopted the State's recommendation, sentencing Brislin to twelve years each on two counts of uttering a forgery with the two sentences to run consecutively. Also at the State's recommendation, the court ordered that the indictment be amended so as to delete that portion charging Brislin as an habitual offender, and ordered that the other two counts of uttering a forgery be retired to the files. On November 30, 1993, at a hearing to determine whether Brislin wished to withdraw his guilty plea, Brislin indicated that he was not satisfied with the performance of his attorney, but stated that he did not wish to withdraw his guilty plea.

On September 30, 1994, Brislin filed a Motion to Vacate and Set Aside Judgment and Sentence, alleging that his guilty plea was not knowingly, voluntarily and intelligently made, and that he received ineffective assistance of counsel. By order entered February 21, 1995, the circuit court found that Brislin's motion was not well taken, and dismissed the motion without the necessity of a hearing, from which ruling Brislin appeals to this Court.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ACCEPTED BRISLIN'S GUILTY PLEA IN VIOLATION OF UNIFORM CRIMINAL RULE OF CIRCUIT COURT PRACTICE 3.03.

Uniform Criminal Rule of Circuit Court Practice 3.03(2) provides that "[b]efore the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea." Brislin argues that the record reflects no factual basis for his guilty plea.

Indeed, "some factual basis for the defendant's guilt is an essential part of the constitutionally valid and enforceable decision to plead guilty." **Reynolds v. State**, 521 So. 2d 914, 916 (Miss. 1988). We find that a sufficient factual basis existed in the case *sub judice*.

Each count in the indictment charged that Brislin "unlawfully, wilfully, feloniously, fraudulently and falsely did . . . utter and publish as true . . . a certain forged and counterfeit writing on paper and instrument in writing, commonly known as and called and purporting to be a bank check of the tenor." Attached to the indictment were copies of several personal checks made out to "Chuck Brislin" on the account of James M. Poe, which checks were signed with the name, "James M. Poe," and endorsed by Charles Brislin. Also in the record was the statement of Geneva Wright of First Columbus National Bank:

> Chuck received cash from each of the above checks when he deposited the checks into his checking account #73-3803-1.

> When these checks was [sic] returned to us unpaid ACCOUNT CLOSED, I contacted Chuck Brislin and he came into the bank. He stated at this time that James M. Poe contacted him in the Kettle Resturant [sic] and contracted him to do some drawings of a piece of property. Chuck said that he was on probation at the time from Louisiana and he could not afford to get involved in anything that wasn't legal. He started crying and offered to pay the bank back every month. Mr. Poe came to town and brought Mr. Brislin into my office. At this time Chuck said that he had never seen Mr. James Poe and that was not the man that gave him the checks.

Although stronger evidence might be required in order for a trial court to accept a guilty plea when the defendant maintains his innocence, Brislin fully admitted his guilt. At Brislin's guilty plea hearing, the judge questioned Brislin as follows:

> [BY THE COURT:] Are you in fact guilty to Count 1 of this indictment?

> A. Yes, sir.

Q. Are you in fact guilty to Count 2 of this indictment?

A. Yes, sir.

There was a sufficient factual basis in the record for the trial judge to accept Brislin's guilty plea.

Brislin also argues that he was never informed of the minimum and maximum sentences he could receive if convicted of the crimes charged. However, the record belies this claim.

Section 97-21-33 of the Mississippi Code provides that persons convicted of forgery shall be sentenced to "not less than two (2) years nor more than fifteen (15) years." In his Petition to Enter a Guilty Plea, Brislin stated that he knew that the possible sentence would be "2 yrs to 15 yrs on each count." At his guilty plea hearing, the judge questioned Brislin as follows:

> [BY THE COURT:] Mr. Brislin, do you understand that on your pleas of guilty to these two counts, on each count the minimum sentence is two years in the Mississippi Department of Corrections and the maximum sentence is fifteen years in the Department of Corrections, not less than two nor more than fifteen on each count? Do you understand that?
>
> A. Yes, sir.

At the hearing to determine whether Brislin wished to withdraw his guilty plea, the judge again asked Brislin if he was aware of the minimum and maximum sentences of two and fifteen years, respectively, for each count, to which question Brislin again responded in the affirmative. Clearly, Brislin was informed of the minimum and maximum sentences of the crimes to which he was pleading guilty.

The record reflects that the judge thoroughly examined Brislin, both at the guilty plea hearing and at the hearing to determine whether Brislin wished to withdraw his guilty plea, in determining that his guilty plea was knowingly, voluntarily and intelligently made. This assignment of error is without merit.

## II. WHETHER BRISLIN RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

We have interpreted the standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984) to require that "when a convicted defendant challenges his guilty plea on grounds of ineffective assistance of counsel, he must show professional errors of substantial gravity. Beyond that, he must show that those errors proximately resulted in his guilty plea and that but for counsel's errors he would not have entered the plea." *Reynolds v. State*, 521 So. 2d 914, 918 (Miss. 1988).

Brislin argues that his court-appointed attorney, Richard Burdine, failed to investigate the charges against Brislin, which investigation Brislin claims would have revealed his innocence. He contends that Mr. Burdine's efforts to arrange a plea bargain evidence a conflict of interest, and that Mr. Burdine's actions in concert with the prosecution and lack of loyalty to Brislin deprived Brislin of his right to effective assistance of counsel.

At the hearing to determine whether Brislin wished to withdraw his guilty plea, Mr. Burdine stated that after his initial meeting with Brislin at the courthouse, he had met with Brislin three more times

at the county jail, and that he had done everything that Brislin had asked him to do. Mr. Burdine stated that he had been unable to locate the people whose names Brislin had given him, and that when he tried to contact Brislin's lawyer in another town, he had reached a wrong number. Mr. Burdine stated that in his dealings with the prosecution in this case, he had no facts and no witnesses with which to bargain, and thus it was only his persistent persuasion that convinced the State to accept the plea bargain.

Brislin also argues that his attorney never explained to him the critical elements of the crime of uttering a forgery. However, at Brislin's guilty plea hearing, the judge questioned Mr. Burdine as follows:

> [BY THE COURT:] Did you also explain to him the elements of the offense with which he is charged?
>
> BY MR. BURDINE: Yes, sir.
>
> Q. Did he give you any indication or reason to believe he did not understand his rights or the elements of the offense?
>
> BY MR. BURDINE: No, he did not.

The record reflects that the circuit court had originally appointed other attorneys to represent Brislin, which attorneys were permitted to withdraw after Brislin expressed that he was not satisfied with their performance. The court then appointed Mr. Burdine who, despite having no facts or witnesses with which to dispute the charges and evidence against Brislin and despite the uncontested fact that Brislin qualified as an habitual offender, was nonetheless successful in having the portion of the indictment charging Brislin as an habitual offender deleted, in having two of the four counts against Brislin retired to the files, and in securing less than the maximum sentence on the remaining two counts. One can only conclude that Brislin benefitted substantially from the performance of his attorney. Furthermore, when repeatedly asked at his second hearing whether he wished to withdraw his guilty plea in light of his alleged dissatisfaction with the performance of his attorney, Brislin stated that he did not. It is therefore difficult to give credence to Brislin's claim that but for counsel's errors, he would not have pleaded guilty. It appears instead that *notwithstanding* counsel's alleged errors, Brislin still wanted to plead guilty. Brislin has failed to show that he received ineffective assistance of counsel.

### III. WHETHER THE JUDGMENT AND SENTENCE VIOLATED BRISLIN'S RIGHT AGAINST DOUBLE JEOPARDY.

### IV. WHETHER THE INDICTMENT WAS DEFECTIVE.

These issues were not raised before the circuit court in Brislin's motion for post-conviction relief, and he may not raise them for the first time on appeal. *Patterson v. State*, 594 So. 2d 606, 609 (Miss. 1992); *Gardner v. State*, 531 So. 2d 805, 808-09 (Miss. 1988). The issues are therefore procedurally barred.

## CONCLUSION

Two of Brislin's assignments of error were not raised in the lower court and thus are procedurally barred. The other two issues were thoroughly addressed by the circuit court at Brislin's guilty plea hearing and at the hearing to determine whether he wished to withdraw his guilty plea. We hold that the circuit court did not err in dismissing Brislin's motion for post-conviction relief without the necessity of an additional hearing.

**LOWER COURT'S DENIAL OF POST CONVICTION RELIEF AFFIRMED.**

**LEE, C.J., SULLIVAN, P.J., PITTMAN, BANKS, McRAE, ROBERTS AND SMITH, JJ., CONCUR. PRATHER, P.J., NOT PARTICIPATING.**